AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of Nebraska

| | |
|---|---|
| In the Matter of the Search of<br><br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>A GOLD THUMB DRIVE IN THE SHAPE OF A BULLET, CURRENTLY LOCATED AT<br>4411 S. 108TH STREET, OMAHA, NE | )<br>)<br>)<br>)<br>)<br>) |

Case No.  8:20MJ486

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of ____Nebraska____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21:841, 846 | Conspiracy to distribute and possess with intent to distribute controlled substances |

The application is based on these facts:

See Attached Affidavis

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

DEA Task Force Officer CJ Alberico
*Printed name and title*

- ☐ Sworn to before me and signed in my presence.
- ☑ Sworn to before me by telephone or other reliable electronic means.

Date:  10-14-20

*Judge's signature*

City and state:  Omaha, Nebraska

Susan M. Bazis, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
OF NEBRASKA

IN THE MATTER OF THE SEARCH OF A
GOLD THUMB DRIVE IN THE SHAPE OF
A BULLET, CURRENTLY LOCATED AT          Case No. 8:20CR486
4411 S. 108TH STREET, OMAHA, NE

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, CJ Alberico, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 and 18 U.S.C.

§§ 2703(c)(1)(A) of the Federal Rules of Criminal Procedure for a search warrant authorizing the

examination of property—an electronic device—which is currently in law enforcement

possession, and the extraction from that property of electronically stored information described

in Attachment B.

2.      I have been employed with the Nebraska State patrol since August 2005 and

assigned to the Investigations Division since 2015. I received deputation as a Task Force Officer

(TFO) with the Drug Enforcement Administration (DEA) for this specific case in May 2020. I

am currently assigned to Criminal Investigations with the Nebraska State Patrol as well as

investigating crimes of Pharmaceutical Diversion. I have received training in the areas of

investigating drug trafficking and money laundering violations under Titles 18 and 21 of the

United States Code. I earned a Bachelor's Degree in Criminal Justice, minored in Psychology as

well as Journalism and certified in Forensic Science Investigation. I have attended in-service

training and training to include criminal investigative techniques for criminal, narcotic and liquor investigations and training on interview techniques. I was a court recognized Drug Recognition Expert. I have received basic and advanced criminal investigations training from the Nebraska State Patrol and Nebraska Law Enforcement Training Center. I have been involved with investigating child abuse cases, sexual assaults, human trafficking cases, domestic assaults and possession and distribution of narcotics. I have participated in criminal investigations to include, but not limited to, evidence collection, Kinesic interviewing, child exploitation, human trafficking, automobile fraud, possession of and/or distribution of narcotics, theft, child abuse, child pornography, child sexual assault, sexual assault, liquor violations and pharmaceutical fraud. I have been involved, as the primary case officer or a supporting officer, in numerous investigations related to the distribution of controlled substances.

3.      The facts in this affidavit come from my personal observations, my training and experience and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.      The property to be searched is s Gold Thumb Drive in the shape of a bullet, hereinafter the "DEVICE". The DEVICE is currently located at the Nebraska State Patrol Troop A Evidence, 4411 South 108th Street, Omaha, Nebraska.

5.      The applied-for warrant would authorize the forensic examination of the DEVICE for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6.      The United States, including the Drug Enforcement Administration, is conducting
a criminal investigation of Cameron ALEXANDER and any unidentified co-conspirators
regarding possible violations of Title 21 United States Code, Sections 841 and 846.

7.      Between March 10, 2020 and March 16, 2020, NSP received 29 reports from
pharmacies in the Lincoln and Omaha area claiming suspicious activity utilizing a variety of
patient names, believed to be fraudulent, written by Dr. Malikian of Happy Family Medicine in
Los Angeles California for Promethazine with Codeine.

8.      On February 10, 2020, a report of pharmaceutical diversion was received from a
North Platte, Nebraska Walgreens Pharmacy indicating a fraudulent prescription written by Dr.
Raphael Malikian for patient Julius Reed, a known co-conspirator to this investigation.  Call
detail records from the telephone number on this prescription, (308) 520-8247, indicated 867
calls from January 23, 2020 thru May 19, 2020, with the telephone number associated with
Cameron ALEXANDER.

9.      Analysis of intelligence collected on Cameron ALEXANDER revealed operator's
license out of Wisconsin, with an address of 817 N. Thompson Drive #206 in Madison, and a
surrendered license out of Nebraska with an address of 2414 W. 15th Street in North Platte. Both
operator's licenses bear a date of birth of October 27, 1991.

10.      A Walgreens prescriber profile for Dr. Raphael Malikian showed eight
prescriptions filled on three occasions. On January 27, 2020 and February 22, 2020 at store
number 5087 located at 2931 S. Fish Hatchery Road in Fitchburg, Wisconsin, and April 9, 2020,
at store number 1159 located at 104 N. Main Street in Verona Wisconsin. The fraudulent

prescriptions filled at Walgreens store number 5087 list patient information including the telephone number associated with the telephone number associated with Cameron ALEXANDER.

11.    From case investigation records obtained from Walgreens covering prescriptions submitted by Dr. Raphael MALIKIAN between the dates of January 1, 2020 thru April 30, 2020, the telephone number associated with Cameron ALEXANDER was found to be associated with 31 fraudulent prescriptions with associated patient names Charles BROOKS, Jacob MITCHELLS, Tracy SMITH, Harold JOHNSON, Eddrick JONES, Brian TAYLOR, Dalvon TAYLOR, John WILLIAMS, Thomas SCOTT, James BRYANT, Jordan JOHNSON, and Marvin WRIGHT.

12.    From case investigation records obtained from Walgreens concerning fraudulent prescriptions bearing the telephone number associated with Cameron ALEXANDER, two (2) Nebraska addresses were located: 2414 W. 15TH Street in North Platte and 2340 Jamie Lane in Lincoln. The telephone number associated with Cameron ALEXANDER was also associated with Madison, Wisconsin addresses of 5782 Tudor Drive, 817 N. Thompson Drive, 817 N. Thompson Drive # 827, 817 N. Thompson Drive # 801, 817 N. Thompson Drive # 819. The telephone number associated with Cameron ALEXANDER was also associated with 5782 Tudor Drive in Fitchburg, Wisconsin.

13.    A review of call detail records from the telephone number associated with Cameron ALEXANDER from March 24, 2020 thru April 22, 2020 show 72 calls to 13 pharmacies, to include; Happy Family Medicine, Happy Family Medicine Hotline (Dr.

Malikian), Walgreens, Aurora Pharmacy, GE Healthcare, Copps Pharmacies, Concentra-Madison West and Schnucks Pharmacy.

14.     A review of call detail records from the telephone number associated with Cameron ALEXANDER showed 653 calls between the dates of March 24, 2020 thru April 22, 2020 to (480) 450-6045 to Eddrick Jones, (308) 520-8247 to Julius Reed, (608) 216-8527 to Malik Bragg and ((308) 530-1574 to Rebeca Romero.  These names and telephone numbers are known co-conspirators to this investigation.

15.     A review of updated call detail records, obtained by subpoena from Verizon Wireless, for the telephone number associated with Cameron ALEXANDER indicated it was still active and under the same account information previously known to this investigation as of June 2, 2020.

16.     Analysis of surveillance videos obtained from Wisconsin Walgreens, confirmed by cross-referencing with the Nebraska Operator's Licenses photo, show Cameron ALEXANDER filling a prescription for Promethazine with Codeine Syrup – 240 ML. at Walgreens #1150 for prescription #1505469.  The telephone number associated with Cameron ALEXANDER was listed on this prescription along with patient information of James Bryant (DOB 6/4/1978) at the address 817 N. Thompson Drive #819, Madison, Wisconsin.

17.     Analysis of call records data show five calls made on June 12, 2020 showing the telephone number associated with Cameron ALEXANDER in contact with the telephone number (773) 668-9378, a number previously identified in this investigation used on prescription number 1417786, written by Dr. Raphael Malikian for Promethazine with Codeine 240 ml. to Walgreens store number 6641 located at 1614 W. 47th Street in Chicago, Illinois.  This prescription listed

patient Donavon Ector (DOB 6/25/1983) at the address 7209 S. Western Avenue in Chicago, Illinois.

18.    Analysis of call records data show a call on June 12, 2020 between the telephone number associated with Cameron ALEXANDER and phone number (773) 606-8134, believed to be subscribed to Dava Sharperson and carried by Davarian Sharperson. The number (773) 606-8134 has been identified during this investigation to have been used on 14 fraudulent prescriptions issued to Walgreens stores with the prescribing physician as Dr. Raphael Malikian. Davarian Sharperson has been listed specifically as the patient on four script scripts, issued by Dr. Raphael Malikain to Walgreens stores, known to this investigation.

19.    Analysis of call detail records for the telephone number associated with Cameron ALEXANDER show contact with Rebeca Romero as recent as June 15, 2020 and Malik Bragg as recent as June 13, 2020, both known to this investigation as co-conspirators.

20.    Analysis of video surveillance provided by Walgreens confirmed on February 15, 2020, Cameron Alexander, the subject believed to be in possession of Cameron ALEXANDER, to be in Walgreens #1159 located at 104 North Main Street in Verona, Wisconsin. Alexander is observed filling prescription for patient James Bryant for Promethazine with Codeine 240 ml, Amoxicillin and Afrin nasal spray.

21.    Analysis of call detail records showed on June 26, 2020, the telephone number associated with Cameron ALEXANDER was contacted by (833) 904-2779, known to this investigation as the telephone number for Happy Family Medicine.

22.    Analysis of data obtained from precise location information data confirmed that the telephone associated with Cameron ALEXANDER was in use and observed utilizing cell towers while in transport from Madison, Wisconsin through Chicago, Illinois and Omaha,

Nebraska. It was also observed on this route from August 1, 2020, returning back to Madison, Wisconsin on August 2, 2020.

23.     Analysis of data obtained from precise location information confirmed that the telephone associated with Cameron ALEXANDER was in use and observed utilizing cell towers while in transport from Madison, Wisconsin to Dubuque, Iowa, then returning to Madison, Wisconsin on August 20, 2020.

24.     A review of call detail records from August 1, 2020 to present for the telephone number associated with Cameron ALEXANDER, showed eighty-three (83) contacts with Rebeca Romero as recent as August 23, 2020 and fifteen (15) contacts with Malik Bragg as recent as August 17, 2020, both known co-conspirators to this investigation.

25.     Analysis of data obtained from precise location information confirmed that the telephone associated with Cameron ALEXANDER was in use and observed utilizing cell towers while in transport on multiple trips from Madison, Wisconsin to Chicago, Illinois and back to Madison, Wisconsin between the dates of August 21, 2020 thru August 22, 2020, August 28, 2020 thru August 29, 2020, and again on August 31, 2020.

26.     A review of call detail records for the telephone number associated with Cameron ALEXANDER since August 1, 2020, indicate eight (8) outgoing calls made to (833) 904-2779, a telephone number associated with Dr. Raphael Malikian and Happy Family Medicine.

27.     Analysis of data obtained from precise location information data confirmed the phone number (308) 520-8247, known to be in possession of Julius REED, a known co-conspirator to this investigation, was in Madison, Wisconsin utilizing the same cell towers as the telephone number associated with Cameron ALEXANDER on August 28, 2020. A review of call detail records indicated during the course of this investigation, the telephone number

associated with Cameron ALEXANDER has had contact with (308) 520-8247 seven hundred ninty-three times from January 28, 2020 thru July 31, 2020.

28.     Analysis of data obtained from precise location information data confirmed that the telephone associated with Cameron ALEXANDER was in use and observed utilizing cell towers while in transport from Madison, Wisconsin to Dubuque, Iowa on September 18, 2020.

29.     On September 18, 2020, staff at the Hartig Pharmacy located in Dubuque, Iowa, alerted investigators that conspirators known to this investigation were attempting to fill fraudulent prescriptions.  The Dubuque Police Department was notified, at which point contact was made detaining Cameron ALEXANDER, Malik Bragg, and Rebeca Romero.  A search conducted by Dubuque Police lead to the seizure of a .45 caliber Springfield XD (SN: 459652), three empty bottle of Promethazine with Codeine, a full bottle of Promethazine with Codeine, numerous fraudulent Rx scripts and approximately sixteen grams of marijuana.

30.     On September 21, 2020, investigators conducted an interview of Cameron ALEXANDER who stated that he had been traveling from Iowa City, Iowa prior to being detained by law enforcement in Dubuque, Iowa.  Analysis of Precision Location Information data indicated that a cellular device with the telephone number associated with Cameron ALEXANDER was found in possession of ALEXANDER.  This was tracked from Madison, Wisconsin to Dubuque, Iowa and had never gone to Iowa City, which contradicted statements made by ALEXANDER.

31.     A search warrant was applied for, and granted, in Dubuque, Iowa, for the vehicle registered and operated by Cameron ALEXANDER.  In the rear cargo area of the vehicle, a laptop computer and a thumb drive in the shape of a bullet was located.

32.    The DEVICE is currently in the lawful possession of the Nebraska State Patrol. It came into the Nebraska State Patrol's possession in the following way:  On September 18, 2020, the Dubuque Police Department was notified of fraudulent prescription(s) attempting to be filled at a pharmacy in Dubuque, Iowa. Law Enforcement made contact and detained Cameron ALEXANDER, Malik BRAGG, and Rebeca ROMERO. During a search, law enforcement seized the following items: a .45 caliber Springfield XD (SN: 459652), three empty bottle of Promethazine with Codeine, a full bottle of Promethazine with Codeine, numerous fraudulent Rx scripts and approximately sixteen grams of marijuana. The vehicle operated by Cameron ALEXANDER was seized while a search warrant was requested.

33.    On September 22, 2020, a search warrant for the vehicle was granted and in conjunction with Dubuque Police, DEA and Nebraska State Patrol assisted with the execution of the warrant. During that search, the DEVICE was located in the rear cargo of the vehicle. Evidence items were signed over from Dubuque Police to the care and custody of Nebraska State Patrol.

34.    Therefore, while the Nebraska State Patrol might already have all necessary authority to examine the DEVICE, I seek this additional warrant out of an abundance of caution to be certain that an examination of the DEVICE will comply with the Fourth Amendment and other applicable laws.

35.    The DEVICE is currently in storage at Nebraska State Patrol Troop A Evidence, 4411 South 108th Street, Omaha, Nebraska. In my training and experience, I know that the DEVICE has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the DEVICE first came into the possession of the Nebraska State Patrol.

## TECHNICAL TERMS

36.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by

connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly

available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

g.  Memory Card: A memory card is utilized in many different types of devices (such as cellular phones, PDAs, GPS Units etc). These memory cards can contain any

type of digital data to include pictures, keystroke information, telephone numbers, contact lists, calendars etc. These items in and of themselves are portable and may be used in multiple devices.

h.  Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

37.     Based on my training, experience, I am aware that the DEVICE requested to be searched has the capability to include, but not limited to, portable storage device using flash memory. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

38.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

39.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

40.    *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

41.    *Manner of execution.*   Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

42.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the DEVICE described in Attachment A to seek the items described in Attachment B.

43.    From training and experience, I know that individuals attempting to obtain, obtaining, using, distributing, and/or selling narcotics, prescription narcotics, stimulants, and depressants commonly seek out narcotics, prescription narcotics, stimulants, and depressants from one or many sources.  Your affiant knows that many investigations involving narcotics, prescription narcotics, stimulants, and depressants are commonly referred to as drug diversion investigations that involve drug seeking characteristics.  These drug diversion investigations involve a variety of individuals, including but not limited to, criminal organizations, drug seekers, physicians, pharmacists, and drug distributors.  Drug diversion investigations involve a variety of actions, including but not limited to, falsifying prescriptions, seeking multiple

physicians and pharmacies, robberies and burglaries of pharmacies and drug distributors, physicians prescribing and/or selling prescriptions to drug seekers or drug abusers, pharmacists falsifying records and subsequently selling the narcotics, employees stealing inventory and falsifying orders to cover illicit sales.

44.     I know that in prior cases, computers, computer equipment, cellular phones, and digital media were seized and found to contain evidence establishing ownership of the digital devices, involvement in criminal activity and ownership or use of any Internet service accounts, to include but not limited to, social media accounts, cloud storage accounts, email accounts, credit card accounts, telephone accounts, correspondence and other identification documents.

45.     To the extent that criminals use services such as phone services, email, instant messaging, social media accounts, cloud storage accounts, and/or text messages, these messages can sometimes be found on the digital media itself.

46.     I know that these digital devices can store a large number of digital data, including but not limited to, photographs, videos, phone numbers and call history. Some digital devices can also contain contact information and calendar information and can be linked, either by wire or wireless, with computers. This information can be valuable evidence in determining other participants in a criminal enterprise. Likewise, your Affiant knows that data stored in these digital devices can contain evidence of where a subject has been and with whom the subject has associated.

47.     I know from training and professional and personal experience that computers, computer equipment, cellular phones, and digital media are personal items, and the DEVICE was located in the vehicle registered and owned by Cameron ALEXANDER while attempting to

divert fraudulent prescriptions. These items have become an important part of a person's way to communicate, express themselves, and store digital data. They contain private conversations and the whereabouts of computers, computer equipment, cellular phones, and digital media are known to their owners at all times.

## REQUEST FOR SEALING

48.    It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant.  I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time.  Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums.  Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

CJ Alberico
Nebraska State Patrol Investigator
Deputized DEA TFO

Subscribed and sworn to before me on October ___14___, 2020

SUSAN M. BAZIS
United States Magistrate Judge

## **ATTACHMENT A**

The property to be searched is a Gold Thumb Drive in the shape of a bullet, hereinafter

the "DEVICE". The DEVICE is currently located at the Nebraska State Patrol Troop A

Evidence, 4411 South 108th Street, Omaha, Nebraska.

This warrant authorizes the forensic examination of the DEVICE for the purpose of

identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the DEVICE described in Attachment A that relate to violations of
Title 21, United States Code 841 and 846, involving Cameron ALEXANDER since December
2019, including:

      a.   Visual depictions of sent and/or received files (including but not limited to still
           images, videos, films or other recordings) or other computer graphic files;

      b.   Electronic copies of log files, to include but not limited to: emails, instant
           messaging, audio, still images, video recordings, chat logs, social media data and
           digital cloud data stored on or about computer hardware.  Computer hardware,
           that is all equipment which can collect, analyze, create, display, convert, store,
           conceal or transmit electronic, magnetic, optical or similar computer impulses or
           data.  Any and all hardware/mechanisms used for the receipt or storage of the
           same, including, but not limited to: any computer system and related peripherals,
           including data processing devices and software (including but not limited to
           central processing units; internal and peripheral storage devices such as fixed
           disks, hard drives, tape drives, disk drives, transistor-binary devices, magnetic
           media disks, external hard drives, floppy disk drives and diskettes, routers,
           computer compact disks, CD-ROMS, DVD, usb storage devices and flash
           memory storage devices and other memory storage devices); peripheral
           input/output devices (including but not limited to keyboards, printer, video
           display monitors, scanners, digital camera, optical readers, recording equipment,
           RAM or ROM units, acoustic couplers, automatic dialers, speed dialers,

programmable telephone dialing or signaling devices, electronic tone generating devices and related communications devices such as modems, cables and connections) as well as any devices, mechanisms or parts that can be used to restrict access to computer hardware (including but not limited to physical keys and locks).

c.  Electronic data contained in the DEVICE to include any names, co-conspirators, associates, phone numbers, addresses, contact information, data, messages, images, voice memos, emails, GPS or specific location information, maps and directions, calendar, photographs, videos, internet sites, documents, receipts, email accounts, social media accounts, cloud storage accounts or other information and ledgers.

d.  Any and all computer passwords and other data security devices designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code;

e.  Documents, records, emails, and internet history (in documentary or electronic form) whether transmitted or received, all  bank records, checks, credit card bills, account information and other financial records;

f.  Records, documents, invoices, notes and materials that pertain to accounts with any Internet Service Provider, including but not limited to social media accounts, cloud storage accounts, and email accounts, as well as any and all records relating to the ownership or use of the computer hardware, digital device and/or digital media account;

g. Digital documents and records regarding the ownership and/or possession of the

   searched premises;

h. any information recording Cameron ALEXANDER and/or co-conspirators

   schedule or travel from December 2019 to the present;

i. During the course of the search, photographs of the searched items may also be

   taken to record the condition thereof and/or the location of items therein.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of Nebraska

| | |
|---|---|
| In the Matter of the Search of | ) |
| | ) |
| A GOLD THUMB DRIVE IN THE SHAPE OF A BULLET, CURRENTLY LOCATED AT 4411 S. 108TH STREET, OMAHA, NE | )   Case No.   8:20MJ486 |
| | ) |
| | ) |
| | ) |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ Nebraska _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____ October 28, 2020 _____  *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Susan M. Bazis _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     10-14-20 at 4:03 p.m.                    *[signature: Susan M Bazis]*
                                                                    *Judge's signature*

City and state:     Omaha, Nebraska                    Susan M. Bazis, United States Magistrate Judge
                                                       *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>8:20MJ486 | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

The property to be searched is a Gold Thumb Drive in the shape of a bullet, hereinafter the "DEVICE". The DEVICE is currently located at the Nebraska State Patrol Troop A Evidence, 4411 South 108th Street, Omaha, Nebraska.

This warrant authorizes the forensic examination of the DEVICE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the DEVICE described in Attachment A that relate to violations of
Title 21, United States Code 841 and 846, involving Cameron ALEXANDER since December
2019, including:

      a.   Visual depictions of sent and/or received files (including but not limited to still
images, videos, films or other recordings) or other computer graphic files;

      b.   Electronic copies of log files, to include but not limited to: emails, instant
messaging, audio, still images, video recordings, chat logs, social media data and
digital cloud data stored on or about computer hardware.  Computer hardware,
that is all equipment which can collect, analyze, create, display, convert, store,
conceal or transmit electronic, magnetic, optical or similar computer impulses or
data.  Any and all hardware/mechanisms used for the receipt or storage of the
same, including, but not limited to: any computer system and related peripherals,
including data processing devices and software (including but not limited to
central processing units; internal and peripheral storage devices such as fixed
disks, hard drives, tape drives, disk drives, transistor-binary devices, magnetic
media disks, external hard drives, floppy disk drives and diskettes, routers,
computer compact disks, CD-ROMS, DVD, usb storage devices and flash
memory storage devices and other memory storage devices); peripheral
input/output devices (including but not limited to keyboards, printer, video
display monitors, scanners, digital camera, optical readers, recording equipment,
RAM or ROM units, acoustic couplers, automatic dialers, speed dialers,

programmable telephone dialing or signaling devices, electronic tone generating devices and related communications devices such as modems, cables and connections) as well as any devices, mechanisms or parts that can be used to restrict access to computer hardware (including but not limited to physical keys and locks).

c.  Electronic data contained in the DEVICE to include any names, co-conspirators, associates, phone numbers, addresses, contact information, data, messages, images, voice memos, emails, GPS or specific location information, maps and directions, calendar, photographs, videos, internet sites, documents, receipts, email accounts, social media accounts, cloud storage accounts or other information and ledgers.

d.  Any and all computer passwords and other data security devices designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code;

e.  Documents, records, emails, and internet history (in documentary or electronic form) whether transmitted or received, all bank records, checks, credit card bills, account information and other financial records;

f.  Records, documents, invoices, notes and materials that pertain to accounts with any Internet Service Provider, including but not limited to social media accounts, cloud storage accounts, and email accounts, as well as any and all records relating to the ownership or use of the computer hardware, digital device and/or digital media account;

g.  Digital documents and records regarding the ownership and/or possession of the

searched premises;

h.  any information recording Cameron ALEXANDER and/or co-conspirators

schedule or travel from December 2019 to the present;

i.  During the course of the search, photographs of the searched items may also be

taken to record the condition thereof and/or the location of items therein.